**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-08556 |
| MORFOOT FAMILY EYE CARE LLC and KRISTIN YUKNA, Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HARTFORD UNDERWRITERS INSURANCE COMPANY ("Hartford"), by and through its attorneys, Michael J. Duffy, Michael J. O'Malley, and Joanna C. Kocol of Wilson Elser Moskowitz Edelman & Dicker LLP, brings this Complaint for Declaratory Judgment against Defendants, MORFOOT FAMILY EYE CARE LLC ("Morfoot") and KRISTIN YUKNA ("Underlying Plaintiff"), and states as follows:

### STATEMENT OF THE CASE

1. This action seeks a declaration, pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), that Hartford owes no insurance coverage obligations for the claims raised in the putative class action lawsuit styled: *KRISTIN YUKNA, on behalf of herself and all others similarly situated v. ABEO SOLUTIONS, LLC d/b/a CRYSTAL PRACTICE MANAGEMENT, SCHEDULE YOUR EXAM, LLC, and MORFOOT FAMILY EYE CARE LLC*, Case No. 2025-cv-3658, pending in the United States District Court for the Northern District of Illinois, Chicago (the "**Underlying Action**").

2. A copy of the Complaint filed in the Underlying Action is attached as "**Exhibit A**".

3. An actual and justiciable controversy exists between Hartford on the one hand, and Morfoot and the Underlying Plaintiff on the other hand, as Hartford denies it owes any defense or indemnification obligations for Underlying Plaintiff's claims.

4. Under the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## PARTIES

5. Hartford is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business at One Hartford Plaza, Hartford, Connecticut.

6. Morfoot is a limited liability corporation organized in the State of Illinois, with its principal place of business at 10880 N. IL Route 47, Huntley, IL in McHenry County.

7. All members of Morfoot are citizens of the State of Illinois.

8. Underlying Plaintiff is an individual and a citizen of the State of Illinois.

9. Underlying Plaintiff is named herein only as a nominal defendant because she is the plaintiff in the Underlying Action and has a potential interest in this litigation.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and the parties are citizens of different states.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Morfoot's principal place of business is in this District, the relevant insurance policies were issued in this District, and the Underlying Action is pending in this District.

# FACTS

## *A. The Underlying Action*

12. On April 4, 2025, Underlying Plaintiff commenced the Underlying Action against Morfoot.

13. Morfoot is an optometry practice operating in Huntley, IL. *See* Ex. A, ¶ 10.

14. Underlying Plaintiff alleges that Morfoot collected and transmitted her and other patients' personally identifiable, sensitive health information pertaining to upcoming appointments, including the fact that the appointment was made, the reason for the appointment, and the name of the health clinic (collectively, "Sensitive Health Information") and knowingly and intentionally caused her and the putative class members' Sensitive Health information to be transmitted to third parties, including Alphabet, Inc. ("Google"). *See* Ex. A, ¶ 3, ¶ 67.

15. Underlying Plaintiff alleges Google offers its clients' website operators access to its proprietary suites of marketing, advertising, and customer analytics software, including Google Analytics, Google AdSense and Google Tag Manager (collectively, the "Business Tools"). *See* Ex. A, ¶ 6.

16. Underlying Plaintiff further alleges that "in exchange for access to these Business Tools, website operators install Google's surveillance software on their website (the "Tracking Tools"), including 'tracking pixels' ("Pixels") and third-party 'cookies' that capture sensitive, personally identifiable information provided to the website operator by its website users." *See* Ex. A, ¶ 7.

17. Underlying Plaintiff alleges that Morfoot installed Schedule Your Exam software, which is online scheduling software that is produced and marketed to optometry and

ophthalmology practices and advertised as "the only real-time online scheduler built directly into and exclusively for Crystal Practice Management." *See* Ex. A, ¶ 15, ¶ 12.

18. Morfoot allegedly installed Schedule Your Exam software directly onto its websites. Through the Schedule Your Exam scheduling portal (the "Portal"), patients can schedule, modify, or cancel appointments with their medical practitioner. Wherever it is installed, the Portal allegedly collects and transmits the Sensitive Health Information provided by patients when scheduling their appointments to third parties, including Google, instantaneously and contemporaneously through the Tracking Tools. *See* Ex. A, ¶ 15.

19. The Underlying Action alleges Morfoot intentionally configured the Tracking Tools installed on the Portal to capture and transmit Underlying Plaintiff's Sensitive Health Information and knowingly and intentionally caused her and the putative class members' Sensitive Health information to be transmitted to third parties. *See* Ex. A, ¶ 62.

20. Underlying Plaintiff alleges that Morfoot's disclosure of her and the putative class members' Sensitive Health Information constitutes a violation of the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Ex. A, ¶ 17.

21. Underlying Plaintiff asserts, on behalf of herself and a class of similarly situated persons, the following statutory and common law claims against Morfoot: Invasion of Privacy — Intrusion Upon Seclusion; Breach of Confidence; Breach of Fiduciary Duty; Negligence; Breach of Implied Contract; Unjust Enrichment; and violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*. *See* Ex. A, ¶ 19.

22. Underlying Plaintiff also alleges that any applicable statutes of limitation should be tolled as a result of Defendants' purported knowing and active concealment of the incorporation of Google's Tracking Tools onto the Portal. *See* Ex. A, ¶ 117.

## ***B. THE POLICIES***

23. Hartford issued three Business Owner's Policies to Morfoot, all bearing policy number 83 SBA AU3KFE and with effective dates of November 4, 2022 to November 4, 2023 (the "2022-23 Policy"), November 4, 2023 to November 4, 2024 (the "2023-24 Policy"), and November 4, 2024 to November 4, 2025 (the "2024-25 Policy") (collectively, the "Policies").

24. A true and correct copy of the 2022-23 Policy is attached as "**Exhibit B**."

25. A true and correct copy of the 2023-24 Policy is attached as "**Exhibit C**."

26. A true and correct copy of the 2024-25 Policy is attached as "**Exhibit D**."

27. Subject to their terms, the Policies provide certain Business Liability Coverage, Employment Practices Liability Coverage ("EPL Coverage"), and Data Breach Coverage to Morfoot. *See* Exs. B-D.

### ***BUSINESS LIABILITY COVERAGE***

28. The Business Liability Coverage Part, Form SL 00 00 10 18, states in part:

> ***A. COVERAGES***
>
> ***1. Business Liability Coverage (Bodily Injury, Property Damage, Personal And Advertising Injury) Insuring Agreement***
>
> ***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.*

*See* Exs. B-D.

29. The Business Liability Coverage Part also contains the following exclusions, in part:

***B. EXCLUSIONS***

***1. Applicable to Business Liability Coverage***

*This Insurance does not apply to:*

***

***p. "Personal and Advertising Injury"***

***(4)*** *Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";*[1]

***

***(11)*** *Arising out of the violation of a person's right of privacy created by any state or federal act.*
*However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;*

***(12)*** *Arising out of:*

***

***(d)*** *Computer code, software or programming used to enable:*
***(i)*** *Your web site; or*
***(ii)*** *The presentation or functionality of an "advertisement" or other content on your web site;*

***

***(15)*** *Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any*

[1] As amended by the Electronic Media Liability Endorsement, Form SL 30 23 10 18.

*person's or organization's confidential or personal information;*

***

***t. Recording And Distribution Of Material Or Information In Violation Of Law***

*"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*

***(1)*** *The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*

***(2)*** *The CAN-SPAM Act of 2003, including any amendment of or addition to such law;*

***(3)*** *The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or*

***(4)*** *Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

*See* Exs. B-D.

30. The Business Liability Coverage Part also contains the following definitions:

***17***. *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

*a. False arrest, detention or imprisonment;*

*b. Malicious prosecution;*

*c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;*

*d. Oral, written, electronic, or any other manner of publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

*e. Oral, written, electronic, or any other manner of publication of material that violates a person's right of privacy;*

*f.* *Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement"; or*

*g.* *Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on your "web site";*

*As used in this definition, oral, written, electronic, or any other manner of publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.* [2]

***

*"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purpose of promoting your goods, products, or services, that is accessible over a computer network, even if other content on "your web site" is not promoting your goods, products, or services.*[3]

*See* Exs. B-D.

***<u>EPL COVERAGE</u>***

31. The EPL Coverage Part, Form SL 55 02 10 18, states in part:

***EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM (CLAIMS MADE)***

***NOTICE: COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE DEDUCTIBLE. PAYMENTS OF CLAIM EXPENSES ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMITS OF LIABILITY. PLEASE READ THE COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. UPON TERMINATION OF THIS COVERAGE PART, EXTENDED REPORTING PERIOD COVERAGE IS AVAILABLE.***

***

***SECTION I – INSURING AGREEMENT***

***Employment Practices Liability***

---

[2] As amended by the Electronic Media Liability Endorsement, Form SL 30 23 10 18.
[3] As amended by the Electronic Media Liability Endorsement, Form SL 30 23 10 18.

> *We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "Insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".*

*See* Exs. B-D.

32. The EPL Coverage Part contains the following definitions:

***SECTION II - DEFINITIONS***

***

*I. "Employee" means any natural person who was, is or shall become a(n):*

*1. employee of an "insured entity" including any part time, seasonal, temporary, leased, or loaned employee; or*
*2. volunteer or intern with an "insured entity."*

***

*K. "Employment practices claim" means any:*

*1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;*
*2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration or similar pleading; or*
*3. formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;*

*by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor".*
*"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.*
*"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.*
*However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.*

*L. "Employment practices wrongful act" means:*

*1. wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;*
*2. sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;*
*3. employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference; gender makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;*
*4. "Retaliation";*
*5. breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or*
*6. violation of the Family and Medical Leave Act.*

*"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:*

*a. employment-related wrongful infliction of mental anguish or emotional distress;*
*b. failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;*
*c. negligent retention, supervision, hiring or training;*
*d. employment-related invasion of privacy, defamation, or misrepresentation; or*
*e. an "employee data privacy wrongful act."*

*See* Exs. B-D.

***a. <u>Data Breach Coverage</u>***

33. The Data Breach Coverage – Defense and Liability Part, Form SL 40 02 10 18, states in part:

***A. INSURING AGREEMENT***

*We will pay for "loss" on behalf of the Insured(s) resulting from a "data breach claim" subject to the limit of insurance, if the following conditions are met:*

*1. The "data breach claim" is first made against you during the "policy period". A "data breach claim" will be deemed to have been made when notice of such "data breach claim" is received by you or by us, whichever comes first.*

*2. At the time you applied for this insurance you had no knowledge of the "data breach" out of which the "data breach claim" arises.*

*3. The "data breach claim" is reported to us within 30 days after you receive notice of the claim, but in no event later than 30 days after the end of the "policy period".*

*4. The "data breach claim" arises out of a "data breach" that occurs in the "coverage territory", and the "data breach" occurs on or after the "retroactive date" and before the end of the "policy period".*

*5. The "data breach" must involve "personally identifiable information" that was held by you or on your behalf in the "coverage territory".*

*See* Exs. B-D.

34. The Data Breach Coverage Part, contains the following definitions, in part:

***J. DEFINITIONS***

* * *

***3.*** *"Data breach" means the loss, theft, accidental release or accidental publication of "personally identifiable information", or circumstances objectively giving rise to a substantial risk that such loss, theft, release or publication has occurred.*

***4.*** *"Data breach claim" means a written demand for relief based upon a "data breach" or a "suit" seeking monetary relief based upon a "data breach".*

*See* Exs. B-D.

**COUNT I**
**Computer Code, Software, or Programing Exclusion (p.12) Bars Coverage**
**(Business Liability Part)**

35. Hartford incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

36. The Computer Code, Software, or Programing Exclusion (p.12) in the Policies bars coverage for “personal and advertising injury” arising out of computer code, software, or programing used to enable: (i) the insured’s website; or (ii) the presentation or functionality of an "advertisement" or other content on the insured’s web site.

37. The claims alleged in the Underlying Action all arise out of computer code, software, or programing used to enable Morfoot's websites or other content on the websites.

38. The Computer Code, Software, or Programing Exclusion (p.12) in the Policies bars coverage for the claims alleged in the Underlying Action.

39. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT II**
**Access or Disclosure Exclusion (p. 15) Bars Coverage**
***(Business Liability Part)***

40. Hartford incorporates and restates the allegations of Paragraphs 1 through 39 above as if fully set forth herein.

41. The Access or Disclosure Exclusion (Exclusion p. 15) precludes coverage for "personal and advertising injury" that arises out of access to or disclosure of any individuals' confidential or personal information, including health information or any other type of nonpublic information.

42. The Underlying Action only seeks damages arising out of access to or disclosure of the Underlying Plaintiff's Sensitive Health Information and identifying information, which is confidential or personal information.

43. The Access or Disclosure Exclusion in the Policies bars coverage for the claims alleged in the Underlying Action.

44. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT III**
**Expected or Intended Exclusion Precludes Coverage**
***(Business Liability Part)***

45. Hartford incorporates and restates the allegations of Paragraphs 1 through 44 above as if fully set forth herein.

46. The Expected or Intended Exclusion bars coverage for "personal and advertising injury" arising out of an offense committed by or with the consent or acquiescence of the insured with the expectation of inflicting “personal and advertising injury”.

47. The Underlying Action alleges Morfoot intentionally configured the Tracking Tools installed on the Portal to capture and transmit the Underlying Plaintiff’s Sensitive Health Information and knowingly and intentionally caused Underlying Plaintiff’s and Class Members’ Sensitive Health information to be transmitted to third parties.

48. Accordingly, the Expected or Intended Exclusion bars coverage for any such claims.

49. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT IV**
**Statutory Right of Privacy Exclusion (p.11) Precludes Coverage**
***(Business Liability Part)***

50. Hartford incorporates and restates the allegations of Paragraphs 1 through 49 above as if fully set forth herein.

51. The Statutory Right of Privacy Exclusion, Exclusion p. 11 in the Primary Business Liability Coverage Part bars coverage for “personal and advertising injury” arising out of a person’s right of privacy created by any state or federal act.

52. Count VII in the Underlying Action is a claim under the Electronic Communications Privacy Act, a federal act that protects a person’s right of privacy.

53. All counts in the Underlying Action incorporate and arise from allegations that Morfoot violated HIPAA, a federal law that establishes federal standards for protecting sensitive health information from disclosure without patients' consent.

54. The Statutory Right of Privacy Exclusion bars coverage for the claims alleged in the Underlying Action.

55. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT V**
**Violation of Laws Exclusion Precludes Coverage**
***(Business Liability Part)***

56. Hartford incorporates and restates the allegations of Paragraphs 1 through 55 above as if fully set forth herein.

57. The Violation of Laws Exclusion, Exclusion **t.** in the Primary Business Liability Coverage Part bars coverage for…"personal and advertising injury" arising out of any action or omission that violates or is alleged to violate "[t]he…TCPA,…CAN-SPAM Act of 2003,…FCRA,…FACTA or [a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

58. The Underlying Action seeks damages arising from violations of federal statutes that prohibit the dissemination of health information without patients' consent.

59. The Violation of Laws Exclusion, Exclusion t., bars coverage for the claims alleged in the Underlying Action.

60. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT VI**
**Breach of Contract Exclusion (p.4) Precludes Coverage**
***(Business Liability Part)***

61. Hartford incorporates and restates the allegations of Paragraphs 1 through 60 above as if fully set forth herein.

62. The Breach of Contract Exclusion (p.4) bars coverage for “personal and advertising injury” arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site".

63. The Underlying Action seeks damages arising from a breach of an implied contract pursuant to which Defendants agreed to safeguard and not disclose sensitive health information without consent.

64. Breach of Contract Exclusion (p.4) bars coverage for such claims.

65. As such, Hartford owes no defense or indemnity obligations for the claims in the Underlying Action.

**COUNT VII**
**No EPL Coverage**
***(EPL Coverage Part)***

66. Hartford incorporates and restates the allegations of Paragraphs 1 through 65 above as if fully set forth herein.

67. The EPL Coverage Part provides coverage for “loss” resulting from an “employment practices claim” first made against the “Insureds” during the “policy period” or Extended Reporting Period, if applicable, for an “employment practices wrongful act” by the “insureds”.

68. The claims in the Underlying Action do not allege an “employment practices wrongful act” as the term is defined.

69. The claims in the Underlying Action do not allege an "employment practices claim" as the term is defined.

70. As such, no EPL Coverage is afforded for the claims in the Underlying Action.

**COUNT VIII**
**No Data Breach Coverage**
***(Data Breach Coverage Part)***

71. Hartford incorporates and restates the allegations of Paragraphs 1 through 70 above as if fully set forth herein.

72. Subject to its terms, the Data Breach Coverage Part provides coverage for a "data breach claim" as the term is defined.

73. "Data breach" means the loss, theft, accidental release or accidental publication of "personally identifiable information", or circumstances objectively giving rise to a substantial risk that such loss, theft, release or publication has occurred.

74. The Underlying Action does not allege a "data breach" as the term is defined.

75. As such, no Data Breach Coverage is afforded for the claims in the Underlying Action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hartford prays this Court enter the following relief:

A. A declaration finding Hartford owes no defense or indemnity obligations for the claims in the Underlying Action under the Policies; and

B. For all such just and equitable relief, including costs of this suit.

**DEMAND FOR JURY TRIAL**

Hartford requests a trial by jury.

Respectfully Submitted,

By: */s/ Michael J. O'Malley*
Attorney for
**HARTFORD UNDERWRITERS INSURANCE COMPANY**

Michael J. Duffy
Michael J. O'Malley
Joanna C. Kocol
Wilson Elser Moskowitz Edelman & Dicker LLP
161 N. Clark Street, Suite 4500
Chicago, Illinois 60601
312.704.0550 (Main)
Michael.Duffy@wilsonelser.com
Michael.O'Malley@wilsonelser.com
Joanna.Kocol@wilsonelser.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, I caused to be filed through the United States District Court CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record.

*/s/ Michael J. O'Malley*
Michael J. O'Malley